IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RENEE HUFF,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:11-CV-455 (MTT) |
| | ) |
| **RAMSAY YOUTH SERVICES OF** | ) |
| **GEORGIA, INC. D/B/A MACON** | ) |
| **BEHAVIORAL HEALTH TREATMENT,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## ORDER

Before the Court is the Defendant's Motion for Summary Judgment.  (Doc. 33). For the following reasons, the Motion is **GRANTED**.

### I. BACKGROUND

This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.*, and the Equal Pay Act of 1963,[1] 29 U.S.C. § 206(d).  (Doc. 1).  The Plaintiff, proceeding pro se, alleges sex and age discrimination and brings claims for wrongful termination and failure to promote.

The Defendant is a facility in Macon that provides mental health treatment to children and adolescents.  (Doc. 33-4, ¶ 3; Doc. 33-5, ¶ 3).  The Plaintiff worked there as an at-will employee from February 15, 2004 to January 5, 2009, first as a Mental

---

[1] The Court construes this claim from the Plaintiff's reference to a violation of "[t]he fair pay act." (Doc.1, ¶ 4).

Health Technician and later as a Lead Mental Health Technician. (Doc. 32 at 45:11-12, 49:4-22, 111:2-6; Doc. 32-3; Doc. 33-4, ¶¶ 4-5, 7; Doc. 33-5, ¶¶ 5, 8, 13). In those positions, she was required to adhere to the Defendant's Level of Observation Policy, which mandated that technicians observe their patients at least once every 15 minutes and record their observations on a Client Observation Record. (Doc. 33-4 at 5-7). The Plaintiff was provided a copy of this policy in April 2008. She signed the policy acknowledging that she had read and understood it. (Doc. 33-4, ¶ 5; Doc. 33-4 at 5-7). Her signature further recognized "that violation of this policy, including falsification of documentation, will result in immediate termination." (Doc. 33-4 at 7). Additionally, the Plaintiff underwent training on the observation policy. (Doc. 33-4 at 8). She knew the observation must be documented at the time it takes place, and that to fill out the form before or after making the observation is falsification of the document. (Doc. 32 at 71:17-72:10, 130:9-15).

In September 2008, the Plaintiff applied for and was promoted to the position of Lead Mental Health Technician.[2] (Doc. 32 at 107:3-108:3, 114:14-15, 123:12-125:20;

---

[2] As noted above, the Plaintiff has alleged failure to promote claims. The Court recites in the margin the facts giving rise to these claims because they occurred prior to November 7, 2008, and are barred because they were not timely presented to the EEOC. *See* note 4 and Parts C.2. and D.2. *infra*; *see also* Doc. 32 at 123:12-126:20. As best the Court can determine from its review of the Plaintiff's deposition, in late 2007 the Plaintiff was employed as a mental health technician when she was "referred" for promotion to shift supervisor. However, a younger male, Anthony Drains, applied for and ultimately won the position. (Doc. 32 at 82:9-16; Doc. 37-6 at 1). He was later terminated, and the Plaintiff became the acting shift supervisor. (Doc. 32 at 87:6-20). In July and August 2008, the Plaintiff sent letters to her superiors seeking the permanent positions of "assistant shift supervisor" or "shift supervisor." (Doc. 32-11; Doc. 32-12). Following her July letter, the Defendant promoted Joseph Strong to assistant shift supervisor. (Doc. 32 at 90:1-23). The Plaintiff's August letter referred to multiple shift supervisor positions that were open. According to the Plaintiff, during that period Strong, Vashun Tobler, Travis [Tarius] Newsome, and Muhammad Sharif were promoted over her. (Doc. 32 at 96:13-18, 21-24, 98:6-8, 99:11-14, 100:10-101:16). Also around that time, the Defendant restructured, assigning registered nurses to shift supervisor positions and creating the new position of lead mental health technician, to which the Plaintiff, who is not a registered

Doc. 33-4, ¶ 7; Doc. 33-5, ¶ 8). On December 9, 2008, the Plaintiff failed to attend a mandatory meeting. Ten days later, on December 19, she was given a written "final warning"[3] for missing the meeting. The warning notified her that the next step in the disciplinary process "will be taken up to and including termination." (Doc. 32-20; Doc. 33-4, ¶ 9; Doc. 33-4 at 11; Doc. 33-5 at 10).

The next day, December 20, the Plaintiff was working as Lead Mental Health Technician when Eric Barber, a Mental Health Technician, went on break. While he was on break, the Plaintiff made three of his 15 minute patient observation checks and documented them accordingly. When Barber returned from his break, the Plaintiff gave the observation form back to him. Barber then failed to document his subsequent 15 minute checks. A short time later, the Defendant's supervisory officials conducted a surprise inspection. During this inspection, they reviewed Barber's client observation record, discovered patient observations had not been documented, and saw that the Plaintiff's name was the last one listed before a series of blank spaces that should have been completed. (Doc. 32 at 133:2-141:21; Doc. 32-21). The Plaintiff says she sought to explain to Brenda Goolsby, the Defendant's program director, what had happened. According to the Plaintiff, Barber himself told Goolsby he was the one responsible for

---

nurse, was promoted. (Doc. 32 at 102:2-4, 107:11-108:3, 111:2-6; Doc. 32-14). The Plaintiff earned a pay raise as part of her promotion. (Doc. 32 at 111:2-25; Doc. 32-15). In October 2008, the Plaintiff again applied for a shift supervisor position. (Doc. 32 at 118:23-119:8; Doc. 32-17). She did not get the job, and says she does not know who, if anyone, did, though she alleges it went to "the highest male bidder." (Doc. 32 at 119:15-24, 126:2-5). The Plaintiff has at most identified six individuals who *could* have received the position: Drains, Alvin Mathis, Newsome, Sharif, Strong, and Tobler. According to the Defendant, it did not promote any of these individuals to shift supervisor during the period of alleged discrimination, between August 20, 2008 and the Plaintiff's firing in January 2009. (Doc. 32-24; Doc. 33-6, ¶¶ 7-8).

[3] According to the warning form, "warning levels may be skipped depending upon the nature of the performance or conduct." (Doc. 33-4 at 11).

the incomplete documentation: "That wasn't [the Plaintiff]. It was me. I made a mistake." (Doc. 32 at 141:22-142:7). The Plaintiff subsequently instructed Barber to fill in the times he had missed, allegedly after Goolsby told her Barber needed "to catch that paperwork up." (Doc. 32 at 149:8-152:11).

Based on the Plaintiff's actions, Goolsby and Jenika Taylor, then the human resources director, concluded the Plaintiff had failed to complete and then falsified documents regarding the 15 minute checks. (Doc. 33-4, ¶¶ 10-11; Doc. 33-5, ¶¶ 11-12). They decided she should be terminated. (Doc. 33-4, ¶ 11; Doc. 33-5, ¶ 12). Goolsby, Taylor, and Brandon Printup, the director of clinical services, met with the Plaintiff January 5, 2009, and fired her for violating the Level of Observation Policy. (Doc. 33-4, ¶ 12; Doc. 33-4 at 12; Doc. 33-5, ¶ 13; Doc. 33-6, ¶ 11). Specifically, the Defendant's Performance and Conduct Correction Form notes the Plaintiff "failed to have [her] 15 minute check sheets in compliance with the recorded time." (Doc. 33-4 at 12). The Plaintiff was 42 years old. (Doc. 32-24 at 1). However, both Goolsby and Taylor state they did not fire the Plaintiff as a result of her sex or age. (Doc. 33-4, ¶ 13; Doc. 33-5, ¶ 15). Further, following the surprise inspection the Defendant fired seven other employees for violating the same Level of Observation Policy as the Plaintiff. These fired employees include four males and three females, ages 21 to 55. (Doc. 32 at 142:21-143:10; Doc. 33-5, ¶ 14).

On May 6, 2009, the Plaintiff submitted a Charge of Discrimination to the Equal Employment Opportunity Commission.[4] (Doc. 32-24). More than two years later, on

---

[4] The Plaintiff in her Complaint states that she filed an EEOC charge on or about February 11, 2009. (Doc. 1, ¶ 11). However, she has not produced any evidence beyond the pleadings to support this claimed date, which is contradicted by the actual EEOC charge that was signed and dated by the Plaintiff on May 6, 2009. (Doc. 32-24 at 1). It is possible, but by no means clear,

August 18, 2011, the EEOC closed its investigation and notified the Plaintiff of her right to sue. (Doc. 1-1). The Plaintiff filed this lawsuit November 14, 2011. (Doc. 1). On April 18, 2012, the Court granted the Defendant's Motion to Dismiss the Plaintiff's claims for damages because she did not disclose her discrimination claims when she and her husband filed a petition for bankruptcy. (Docs. 10, 14). Thus, injunctive relief – reinstatement to her former position – is the only remaining remedy available to the Plaintiff. The Defendant has moved for summary judgment on these remaining claims.[5] (Doc. 33).

---

that February was the month the Plaintiff claims she sent a handwritten form to the EEOC, which she refers to in her deposition. (Doc. 32 at 164:21-24). No such form has been filed with the Court. However, even had the handwritten form, if it exists, been submitted to the Court, there is no guarantee it would be sufficient to serve as a proper EEOC charge. *See E.E.O.C. v. Summer Classics, Inc.*, 471 Fed. Appx. 868, 871-72 (11th Cir. 2012) (finding that employee's EEOC intake questionnaire and handwritten note did not constitute an EEOC charge). Further, the Plaintiff has not, even in her response brief, disputed the Defendant's contention in its statement of material facts that her claim was not filed until May 6, 2009. Accordingly, the Court concludes she did not file her EEOC charge until that date.

[5] In responding to the Defendant's motion, the Plaintiff filed only a brief with various records attached. (Doc. 37). She did not submit a statement of material facts or respond to the Defendant's statement of material facts, as required by Local Rule 56. Nor did she present any affidavits or sworn testimony. Pro se parties are held to a less stringent standard than attorneys and their filings are to be liberally construed. Recognizing this, the Court has tried to assemble and interpret the Plaintiff's factual allegations and legal arguments as best it can. This has not always been an easy task. But the Court can go only so far: The Plaintiff's pro se status does not give the Court license to serve as de facto counsel for her or permit the Court to rewrite otherwise deficient pleadings. *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)(*overruled on other grounds by Randall v. Scott*, 610 F.3d 701, 706 (11th Cir. 2010)). Nor does a pro se litigant escape the essential summary judgment burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The Plaintiff cannot meet this burden with unsupported allegations or unsworn statements. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). Further, the consequence of not responding to a moving party's statement of material facts is that those facts "shall be deemed to have been admitted." M.D. Ga. L.R. 56. Consequently, the Court has done its best to fairly present what it believes to be the Plaintiff's case while keeping these principles in mind so that it does not exceed its role as an impartial adjudicator.

## II.  DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy her burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  *See also* M.D. Ga. L.R. 56 ("All material facts contained in the moving party's statement [of facts] which are not specifically controverted by specific citation to the record shall be deemed to have

been admitted, unless otherwise inappropriate"). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.

### B. McDonnell-Douglas Framework

A Title VII plaintiff may prove her case directly or circumstantially. Here, there is no direct evidence of discrimination, so the Plaintiff must rely on circumstantial evidence. The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons," but must produce evidence to raise a genuine factual dispute as to whether it discriminated against the plaintiff. *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination. "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or

indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* at 1308 (quoting *Burdine*, 450 U.S. at 256). Put another way, "a plaintiff can survive a motion for summary judgment…simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997).

### C.     Title VII Claims

Pursuant to Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

#### 1.     Wrongful Termination

To establish a prima facie case that she was discharged because of her sex, the Plaintiff must show (1) she was a member of a protected class; (2) she was qualified to do the job; (3) she was subjected to an adverse employment action by her employer; and (4) similarly situated employees outside of the protected class were treated more favorably. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)). Here, the Defendant does not contest that the Plaintiff belongs to a protected class, was qualified to do her job, and was subjected to an adverse employment action. However, the Defendant contends the Plaintiff cannot make out a prima facie case because she has not shown similarly situated employees outside her classification were treated more favorably.

A proper comparator employee is "'a similarly-situated employee who committed the same violation of work rules, but who was disciplined less severely than [the plaintiff].'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276 (11th Cir. 2008).  To determine if employees are similarly situated, the Court evaluates "'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler v. Orange Cnty. Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  The quantity and quality of the comparator employee's misconduct must "'be nearly identical to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* "Misconduct merely similar to the misconduct of the disciplined plaintiff is insufficient." *Rioux*, 520 F.3d at 1280 (internal quotation marks omitted).  As best the Court can determine,[6] the Plaintiff has offered two comparator employees:  Travis Gates and Anthony Drains. (Doc. 32 at 158:6-14; Doc. 33-7 at 4).  Neither is a similarly situated employee treated more favorably than the Plaintiff.

Gates was one of the mental health technicians working the night the surprise inspection was conducted but who apparently was not fired.  (Doc. 32 at 133:18-134:6).  The Plaintiff says she saw Gates's paperwork that night and he had not properly documented his patient observations.  (Doc. 32 at 158:15-20).  However, according to the Plaintiff, Gates's paperwork subsequently "disappeared," and Goolsby could not find it.  (Doc. 32 at 159:1-11).  Relying on this testimony, the Defendant argues that because Gates's paperwork was not available, it had no documentation of his alleged noncompliance.  Therefore, the Defendant would contend, Gates must be an "apple" to the Plaintiff's "orange" because the Defendant had concrete evidence of the Plaintiff's

---

[6] *Supra* note 5.

-9-

falsified documentation but nothing to show Gates's wrongdoing. But this misses what the Court believes to be the Plaintiff's point. Precisely because his paperwork was missing, Gates, like the Plaintiff, could not show he was in compliance with the Level of Observation policy. The Plaintiff further testified that Gates acknowledged his noncompliance by telling her after the surprise inspection, "Well, I know I'm fired." (Doc. 32 at 142:16-20). Thus, the Plaintiff has adduced some evidence that Gates also violated the Level of Observation policy.

Nevertheless, there is a critical distinction between the Plaintiff and Gates: the Plaintiff was fired for conduct taking place the day after she received a "Final Warning," a disciplinary measure that subjected her to termination if she again violated the Defendant's workplace rules. There is no evidence, or even an allegation, that Gates was issued such a warning. Therefore, Gates was not similarly situated to the Plaintiff and cannot serve as a proper comparator employee.

Nor is Drains a proper comparator. In 2008, Drains was an assistant shift supervisor. According to the Plaintiff, Drains was fired from that position in July 2008 for playing basketball and for "not doing his levels of observations or something of that nature." (Doc. 32 at 87:6-19). Drains was rehired several months later, apparently in October 2008.[7] In August 2010, Drains was disciplined, but not terminated, for violating the Level of Observation policy. (Doc. 37-5 at 2). The Plaintiff appears to be contending that Drains is a proper comparator either because he was fired in 2008 but later rehired, because he was not terminated in August 2010 for violating the Level of

---

[7] The parties do not clearly state the date of Drains' rehiring. The Plaintiff says Drains was rehired in 2009. (Doc. 37, ¶ 18). However, the record contains a "Personnel Action Form" dated October 13, 2008, indicating that Drains was rehired then as a childcare worker. (Doc. 33-7 at 34).

Observation policy, or both. Regardless, Drains is not a proper comparator because, unlike the Plaintiff, the day prior to violating the Level of Observation policy he did not receive a final warning indicating "the next step in the disciplinary process will be taken up to and including termination." (Doc. 33-4 at 11). Finally, given the significant temporal disconnect between the Defendant's alleged misconduct and the Plaintiff's, the Plaintiff has simply not put forward enough factual evidence to create a genuine dispute as to whether the circumstances surrounding Drains' rehiring and disciplining are nearly identical to the circumstances surrounding the Plaintiff's firing.[8] Consequently, Drains cannot serve as a comparator employee to the Plaintiff.

Because the Plaintiff has not presented any proper comparator employees, she has not shown "similarly situated employees outside of [her] protected class were treated more favorably." That is, the Plaintiff has not demonstrated she was treated differently from male employees when she was fired. Accordingly, the Court finds she cannot make out a prima facie case of discriminatory discharge based on her sex.

Because the Plaintiff cannot make out a prima facie case, the Court need not determine whether the Defendant's proffered legitimate, nondiscriminatory reason for firing her was pretext for discrimination. However, the Court notes deficiencies in the Defendant's argument that, had the Plaintiff presented a prima facie case, suggest she could have created a genuine dispute as to the actual reason for her termination. The Defendant claims it fired the Plaintiff because she violated the Level of Observation

---

[8] The Defendant also notes that when Drains was disciplined in 2010, it was at the hands of a supervisor who was not involved in the Plaintiff's firing. The fact that different decisionmakers were responsible for disciplining the Plaintiff and Drains is not dispositive in determining that Drains is an improper comparator. However, it does serve to further distinguish their situations. *Moore v. Ala. Dept. of Corrections*, 137 Fed. Appx. 235, 239 (11th Cir. 2005)(citing *Anderson v. WBMG-42*, 253 F.3d 561, 565-566 (11th Cir. 2001)).

policy. (Doc. 33-4, ¶ 11; Doc. 33-5, ¶ 12). But the Plaintiff offers evidence, in the form of her deposition testimony, that the incomplete documentation is not her fault but rather the fault of her subordinate, Barber, who she covered for while he was on break. (Doc. 32 at 136:12-138:2 ). According to the Plaintiff, after the inspection uncovered blank spaces on the observation sheet, she explained the situation to Goolsby. Moreover, the Plaintiff says that Barber himself told Goolsby, "That wasn't [the Plaintiff]. It was me. I made a mistake." (Doc. 32 at 141:22-142:7). A co-worker, Veronica Stephens, later signed a statement indicating "Mrs. Goolsby was informed" after the surprise inspection why the Plaintiff had signed Barber's paperwork. (Doc. 37-4 at 3). The Plaintiff also provides a statement apparently written by Gates in which he reports witnessing Barber tell the Plaintiff that he took "full responsibility" for the paperwork not being properly filled out.[9]  (Doc. 37-4 at 1).

     Accordingly, there is evidence that Goolsby knew shortly after the inspection that it was Barber who had not made the required entries. Yet the Defendant totally disregards this evidence and fails to address it at all in its briefs. Instead, the Defendant rests on the assertion that it honestly believed the Plaintiff was the one who failed to properly document her observations. (Doc. 33-1 at 13; Doc. 33-4 at 12; Doc. 38 at 6-7). By providing evidence that she did not herself violate the Level of Observation policy, and evidence that, at the time, the Defendant knew someone else was responsible for her alleged violation, the Plaintiff likely creates a genuine dispute as to whether she was fired for the reason the Defendant says she was fired or whether she was fired for some unstated reason. At its peril, the Defendant ignored this.

---

[9] The Defendant has not objected to any of the evidence offered by the Plaintiff.

However, as stated above, the Plaintiff has not made out such a case.[10] Accordingly, summary judgment is **GRANTED** to the Defendant on the Plaintiff's Title VII wrongful termination claims.

### 2. Failure to Promote

The Plaintiff contends there were several occasions during her employment when the Defendant did not promote her because of her sex.[11] However, the Plaintiff did not exhaust her administrative remedies with respect to her failure to promote claim. She filed her EEOC charge May 6, 2009.[12] That limits her complaint to discriminatory conduct occurring after November 7, 2008. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (for a charge of discrimination to be timely under Title VII, it must be filed within 180 days of the last discriminatory act). All of the conduct that relates to the Plaintiff's failure to promote claim occurred prior to November 7, 2008. (*Supra* note 2; Doc. 33-2, ¶¶ 6-10).

---

[10] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent. A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). Thus, a plaintiff could make out a prima facie case for discrimination even without providing comparator employees. However, the Plaintiff in this case has not presented "a convincing mosaic of circumstantial evidence" that the Defendant acted with discriminatory intent. Perhaps most damaging to her case in this regard is the Defendant's firing of seven other employees of mixed genders and ages for similar violations discovered the night of the surprise inspection. (Doc. 32 at 142:21-143:10; Doc. 33-5, ¶ 14). That the Defendant fired a range of rule breakers strongly suggests it was motivated by something other than age or gender. Therefore, the Plaintiff does not meet *Lockheed-Martin's* standard.

[11] *Supra* note 2.

[12] *Supra* note 4.

Even if the Court were to assume, in the absence of evidence, that the Plaintiff's final request for promotion – her October 7, 2008, application for shift supervisor – was not rejected until *after* November 7, she still has not put forward a prima facie case. "[T]o prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of sex discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *B/E Aerospace, Inc.*, 376 F.3d at 1089. Here, the Plaintiff has not specifically identified any other equally or less qualified male employees who were promoted to shift supervisor in her place following her October application.[13] She says she does not know who filled those jobs, and asserts only generally that they went to "the highest male bidder." (Doc. 32 at 126:4-5). Moreover, according to the Defendant's human resources director, Vincent Foley, none of the male employees the Plaintiff mentioned while discussing her failure to promote claim were promoted to shift supervisor between August 20, 2008, and January 5, 2009, the date of her termination. (Doc. 33-6, ¶¶ 6-8).

Accordingly, because it is administratively barred, and because the Plaintiff cannot make out a prima facie case, summary judgment is **GRANTED** to the Defendant on the Plaintiff's Title VII failure to promote claim.

### D.    Age Discrimination in Employment Act Claims

Pursuant to the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to

---

[13] Moreover, the Plaintiff herself appears not to have been qualified for the position because, following the Defendant's restructuring, the shift supervisors were all registered nurses. The Plaintiff had no nursing certifications. (Doc. 32 at 107:19-108:3, 114:14-115:2).

[her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  As with Title VII, the *McDonnell Douglas* framework applies to ADEA claims based on circumstantial evidence.  *Chapman*, 229 F.3d at 1024.

### 1.     Wrongful Termination

To make out a prima facie case that she was fired because of her age, the Plaintiff must show "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Kragor*, 702 F.3d at 1308 (citation removed).  Similarly, the Plaintiff may also prove her case by showing the misconduct for which she was discharged was nearly identical to that engaged in by a younger employee who was retained.  *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (1984).

The Plaintiff has not introduced evidence sufficient to create a genuine dispute that she was replaced by a substantially younger individual.  She merely states, in her response to the Defendant's summary judgment motion, that she "was replaced by male employee Travis Newsome[14] younger than age 40." (Doc. 37, ¶ 30).  But she does not cite to anything in the record to support this assertion.  *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 983 (11th Cir. 1989) ("The plaintiff must develop a record to show that a

---

[14] Presumably, the Plaintiff is referring to *Tarius* Newsome. The Defendant never employed an individual by the name of *Travis* Newsome. (Doc. 33-6, ¶ 6; Doc. 40-1, ¶ 6). But the mere fact that the Plaintiff confused Newsome's first name would not prevent her from establishing that a younger employee replaced her, and the Court is not impressed with the Defendant's argument that the Plaintiff's allegations fail simply because she got his name wrong. (Doc. 40 at 2).  It is clear to all that the Plaintiff is, in fact, referring to Tarius Newsome.

purported replacement actually performed the plaintiff's duties"). Moreover, although the Plaintiff refers to Newsome in her deposition, she never does so in the context of him replacing her after she was fired. Rather, she describes Newsome as an employee who worked for the Defendant at the same time she did, and who was given promotions in favor of her during that time. (*See, e.g.*, Doc. 32 at 80:10-17).

The Defendant, on the other hand, offers an affidavit from Foley stating that

> Mr. Newsome was promoted to the position of Shift Supervisor effective September 23, 2007, and remained in that position until his termination on July 17, 2009. There is no evidence in Mr. Newsome's personnel file that he replaced Ms. Huff or filled the position from which she was discharged on January 5, 2009.

(Doc. 40-1, ¶¶ 8-9). Similarly, Dewanda Lyons, a lead mental health technician for the Defendant who has been employed there since 2004, states in an affidavit:

> Tarius Newsome was promoted to the position of Shift Supervisor on or about September 23, 2007, prior to Renee Huff's termination on January 5, 2009. Mr. Newsome did not replace Ms. Huff or fill her position when her employment was terminated, but remained in his Shift Supervisor position. When Ms. Huff's employment was terminated, no one replaced her or filled her position. At the time of Ms. Huff's termination of employment, there was a decrease in the number of patients at Macon Behavioral, and other employees assumed Ms. Huff's job duties.

(Doc. 40-2, ¶¶ 4-6). In the face of this detailed evidence, the Plaintiff's vague and unsupported assertion that Newsome replaced her is not sufficient to create a genuine dispute as to whether a substantially younger person filled the position from which she was discharged. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (for factual issues to be considered genuine, they must have a real basis in the record, and mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion).

Additionally, the Plaintiff has not shown that younger employees were retained after engaging in misconduct identical to hers. For the reasons discussed in Part C of this Order, neither Drains nor Gates engaged in nearly identical misconduct as the Plaintiff, and they are not proper comparators in this situation. Further, the Plaintiff has not put forward evidence of anyone else who was retained in the same circumstances under which she was fired. In fact, as previously noted, six of the seven individuals fired for violating the Level of Observation policy on the night of the surprise inspection were younger than the Plaintiff. (Doc. 32 at 142:21-143:10; Doc. 33-5, ¶ 14).

Consequently, the Plaintiff cannot make out a prima facie case that she was discharged because of her age. Therefore, summary judgment is **GRANTED** to the Defendant on the Plaintiff's ADEA wrongful termination claims.

### 2. Failure to Promote

Like the Title VII failure to promote claim discussed above, the Plaintiff's ADEA failure to promote claim is administratively barred.[15] And to whatever extent this claim could be construed as timely filed with the EEOC, the Plaintiff has not made out a prima facie case[16] that, following her October 2008 application for shift supervisor, she was

---

[15] See Part C. 2. of this Order. *See also* 29 U.S.C. § 626(d)(1) (providing that an ADEA claim must be filed with the EEOC within 180 days of the alleged unlawful practice).

[16] The applicable elements are laid out in parts C. 2. and D. 1. of this Order. When addressing ADEA failure to promote claims, the Eleventh Circuit has used different standards. It sometimes applies the prima facie elements of an ADEA wrongful termination claim. *See, e.g.*, *Howell v. Compass Group*, 448 Fed. Appx. 30, 34 (11th Cir. 2011) (citing *Bogle v. Orange Cnty. Bd. Of Cnty Comm'rs*, 162 F.3d 653, 656-57 (11th Cir. 1998)); *Smith v. Potter*, 310 Fed. Appx. 307, 310 (2009) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)). Other times it applies the prima facie elements of a Title VII failure to promote claim. *See, e.g.*, *Guimaraes v. NORS*, 366 Fed. Appx. 51, 55 (2010) (citing *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348 n.2 (11th Cir. 2007) (race discrimination case) and *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1543 (11th Cir. 1988) (ADEA failure-to-promote case)). But the requirement common to both standards that is most applicable here is that the Plaintiff must show a younger person was promoted to the position she applied for.

not promoted because of her age.  Specifically, similar to her inability in her Title VII claim to identify any qualified male employees who were promoted to this position instead of her, the Plaintiff has not put forward any "substantially younger person [who] filled the position that she sought." *Kragor*, 702 F.3d at 1308.  Moreover, as previously observed, none of the employees the plaintiff has mentioned when discussing her failure to promote claims were promoted to shift supervisor between August 20, 2008, and January 5, 2009, and the Plaintiff herself appears unqualified for the position. (Doc. 32 at 107:19-108:3, 114:14-115:2; Doc. 33-6, ¶¶ 6-8).

Accordingly, because it is administratively barred, and because the Plaintiff cannot make out a prima facie case, summary judgment is **GRANTED** to the Defendant on the Plaintiff's ADEA failure to promote claim.

### E.    Equal Pay Act

There is no equitable remedy available to a plaintiff privately suing for equal pay pursuant to 29 U.S.C. § 206(d).  *See Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002) ("for violations of the wage and overtime provisions, the [Fair Labor Standards Act][17] does not list equitable relief as an available remedy in an employee suit"); *Powell v. State of Florida*, 132 F.3d 677, 678 (11th Cir. 1998) ("the right to bring an action for injunctive relief under the Fair Labor Standards Act rests exclusively with the United States Secretary of Labor").  And the Court has previously dismissed all of the Plaintiff's claims for money damages.  (Doc. 14).  Therefore, the Plaintiff's Equal Pay Act claims are either moot or were never viable, and to whatever

---

[17] The Equal Pay Act is an amendment to the Fair Labor Standards Act.  *See* Equal Pay Act of 1963, Pub. L. No. 88-38, 77 Stat. 56-57; *Wallace v. Dunn Const. Co., Inc.*, 62 F.3d 374, 377 n.2 (11th Cir. 1995).

extent they have not been previously dismissed, summary judgment is **GRANTED** to the Defendant.

### III. CONCLUSION

For the foregoing reasons, the Defendant is entitled to judgment as a matter of law on all of the Plaintiff's claims. Accordingly, the Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED**.

**SO ORDERED,** this 15th day of July, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
